May it please the Court, my name is Stephanie Engelkar. I represent Washington County and the appellants in this case. This appeal is about whether it is clearly established the specific suicide prevention measures appellants took in response to Bill's risk of suicide were clearly unconstitutional. In 2018, it was not beyond debate that a detainee with a risk of suicide could be housed in a specialized unit rather than an isolation cell so the correctional officers are entitled to qualified immunity. There was also no case putting nurse is on notice when faced with a detainee with a risk of suicide, they could respond to his risk and assess him rather than send him to an emergency room or refer him to a qualified mental health professional. This case highlights the importance of public employees having fair notice that what they are doing violates the Constitution. Our Supreme Court recognizes this with Hope v. Pelzer that officers, employees that are sued in a civil action for damages under section 1983 have the same right to fair notice as do defendants who are charged with a crime under the same offense, a civil rights crime. This is the crux of this appeal. As we sit here today... That's a pretty broad statement that I don't think would hold up in all cases, that there's a pure equation between a criminal defendant's right to fair notice of a crime and the clearly that they are not the same. Your Honor, with Hope v. Pelzer, the Supreme Court made that correlation with a criminal offense under 18 U.S.C. section 242, which would be a criminal offense of a constitutional... I have to tell you that that case is cited all the time and in my view, the Supreme Court is basically limited to its facts, which means it's got general principles that are fine but it almost never applies. Well, Your Honor, the court with Hope v. Pelzer, the point is that section 242, so 18 U.S.C. section 242, makes it a crime for a state official to act willfully to deprive a person of rights protected by the Constitution. And my point is that the Supreme Court has said you need fair notice for that criminal defendant for that civil rights crime, very specific. So, Your Honor, you're correct that it's not a broad umbrella that's covering all criminal defendants. We're talking specifically about a civil rights crime under 242. The fair notice is required here. And this is key... In your view, did the district court analyze the principle of deliberate indifference correctly under a circuit law? No, Your Honor. Unfortunately, in the interlocutory appeal, we are... You see, there's this notion that only clearly established can be come up on an interlocutory appeal. And that's floating out there, that notion, but it's wrong. It's usually the only issue that, well, it's always, we always have the option to address that. And often they're the question of the underlying merits, constitutional merits are fact-intensive. But it is not true that we cannot review the first prong of qualified immunity on an interlocutory appeal. I don't know what got into the bar, and maybe some district judges on that. Well, Your Honor, you're correct that this appeal highlights how important... But the district court got the deliberate indifference standard wrong. Correct. And then how does that play out under both prongs of qualified immunity? Yes, Your Honor. Well, we've argued both prongs were decided incorrectly here. So under Pearson v. Callahan, this court can address either. They can address, it can address both. It could decide the appeal on one. The key here under both prongs, and we've addressed it in our briefing as to specifically why the district court was wrong in finding that there was a fact issue as to whether the nurses or the officers were deliberately indifferent in their response to the suicide risk. But what's key here in this appeal is that these And as this court and as the Supreme Court has indicated, there is no clearly established law that puts employees on notice of what specific measures that they should take. And here we're looking at, there's nothing that says you have to put them in isolation. As this court's going to hear later today, you can get sued for having them in isolation too long. So what's a jail to do? That's why we have qualified immunity and need the fair notice. I'm sorry, Your Honor. But back to where Judge Loken kind of started the conversation, if the deliberate indifference analysis is wrong. And if in fact the district court has actually applied some sort of medical malpractice or negligence or even gross negligence standard, which we would ordinarily say doesn't amount to deliberate indifference in our line of cases, which that's a relatively high bar, do we even have to, we don't even get to anything else. I mean, at the end of the day, you know, if we say the district court's got deliberate indifference wrong, there is no sufficient set of facts here that gives rise to a question of deliberate indifference. That's the end of our analysis, right? Yes, Your Honor. That is true. The court could find, for example, under Luckert v. Dodge, County, that is a good case to look at where it's saying... Yeah, we could just say prong one, you don't get there, you lose. We could say prong one, there's a question. And if we get to that, then we get to the second part of the prong two, and that is, is it clearly established? And you've got a case that says that, well, that specific measures are not clearly established, but don't specific measures in some manner way, shape, or form inform that prong, right? I mean, you know, you could consult with a shaman, right? And there may not be a case out there that says consulting with shamans is inappropriate, but, you know, you might say that that doesn't seem to get there, right? And so we're still always going to look at, well, what steps were taken, right? And if those steps are within the bell curve of what would be reasonable medical judgment, you'd say there it is, then you'd be relying on that there's no case law out there that says this particular decision-making process is unconstitutional. You could decide it on prong two, right? Does this make any sense at all? Yes, it does. It's actually, it's a good point. It's one I consider... This is A.H. v. St. Louis County. Yes, yes, Your Honor. So, I mean, A.H. is a good one to look at, too, in terms of what exactly happened here. And unfortunately, with the district court's order looking at that, in A.H. it said, the suicide's not probative of the question where there was deliberate indifference. And unfortunately, with the district court order and the method of suicide in this case, that's exactly what happened. It was expecting the officers and nurses to somehow be able to tell the future that this individual would walk up to the second tier. I don't understand. Okay, you're saying, you're arguing for plaintiff that A.H. does not control it. No, Your Honor. I'm not saying that. I just heard. No, I said... You're distinguishing it. No, I am not distinguishing at all. In A.H., the court held there was no Fourteenth Amendment violation, so it did not go to the second prong of whether they were entitled to qualified immunity. So A.H. is an example where it just, the Eighth Circuit addressed the first prong. Was that an interlocutory appeal? I can't remember. I left it after a bench trial. It was an interlocutory appeal. It conclusively makes my point that clearly established is not the only issue that we ever consider. It looks like it was after a grant to summary judgment. Yeah. Yes. So it was not an interlocutory... It refutes your assertion that we can only look at clearly established or a plaintiff's assertion. We get it asserted by appellees all the time these days because this wrong notion has seeped out there and captured a big audience. Well, frankly, I'd love for you to address that prong. And for this appeal, I will say that even after the district court's decision, it's still clear as mud as to what specific measures must be done once the individual is identified as a risk of suicide. It's not as if the Department of Corrections has a standard that says you must put them in an isolation cell. It's not as if the Department of Corrections has a standard that says you can't use your correctional nurse to assess them for suicide risk. Now appellee has pointed out the NCCHC standard, like the gold star to have a qualified mental health professional that does that assessment. But under Bell v. Woolfish, our Supreme Court has said those standards can be helpful, they can be guidance, but they don't set the floor. That's not the constitutional minima that we're looking at. And that's where I tie that back to how important it is for fair notice. Because if we think about, take a step back and think about who's doing this job, who's sued here, public employees, how do you get Let me just, your time is limited here. Let's assume that, let's take it up where Judge Erickson left off, that the deliberate indifference standard was misapplied by the district court and therefore on appeal we can either say the plaintiff loses because there's nothing in the record, or the facts are such that we can't end the case under prong one. And then we turn to prong two and let's assume. All right, so at that point, argue the Monell issue. Yes. Do we have to end prong one with plaintiff loses in order for this to be sufficiently intertwined to review your Monell argument? I want to make sure I understand your question. So if you. Let me put a little more fluff on it, if you will. The clearly established prong does not get a Monell defendant off the hook because it doesn't establish that there was no individual employee that violated the Constitution and therefore the unconstitutional pattern of practice policy issue is still alive, if not well. It may not be well, but it's alive. On the other hand, if we decide on appeal or uphold the district court's decision that no individual employee violated the Constitution, that ends the Monell claim. Yes. And if it comes up on appeal and we reverse the district court on prong one, but don't decide that there's necessarily no constitutional violation, where does that leave the Monell claim? And I think this is now somewhat new territory and I appreciate you addressing it. Yes, Your Honor. This is a unique issue and I agree with Your Honor's questions. Under Religert and Leiby, which Your Honor I believe had authored, that this presents kind of a similar situation where you can't have a policy that is both an effort to prevent suicides and at the same time be deliberately indifferent to suicides. And the key here is that both the use of C400 to house inmates that were at a risk of suicide and using the jail nurses to assess suicide risk and make the determinations for watch status, both were based on policies and they're intertwined here that the court could determine that it was not deliberately indifferent and plaintiff also failed to... Okay, but what if we don't? What if we decide that the district court applied the wrong standard and we would not affirm its summary judgment on prong one? Then you can dismiss the Monell. We go on to, you know, accept your fair notice argument and it wasn't clearly established. Now, I think on the face of our precedence, we would say, okay, now we're not going to reach Monell. The only thing that would make it sufficiently intertwined is if we conclude on appeal that no individual employee committed a constitutional violation. Do you agree with that? Yes, Your Honor. I'll reserve the rest of my time for rebuttal. Thank you. Mr. Marth? Thank you, Your Honor. My name is Ryan Marth. I'm stepping in for Mr. Noll and I hope I can provide a good, helpful argument to the court. I represent Ms. Brabbit, the defendant. Of course, it's clearly established that you aren't deliberative, indifferent and indifferent. You're right. But, I mean, the risk of suicide, we've got cases that when steps are taken, you don't just look at hindsight and say, well, obviously, they didn't do enough. That's not clearly established. That is correct. Those are the cases where the inquiry comes down to the deliberate indifference prong, I would submit, where the court looks at, well, what's on appeal? That is on appeal here. Okay. So? So, and I was trying to parse the two prongs separately from each other, that there is a clearly established right to be protected from the known risk of suicide. Yeah. But if you just state it that way, it's at a level of generality that our court has because why is it deliberately indifferent? What are the facts in this case that makes it? You know, because ordinarily, we've got a whole line of cases that say, we recognize that there's a suicide risk, we do an evaluation, we take measures. And at that point, that's usually enough that we say, yeah, you're not deliberately indifferent. So there's got to be something about this case that's plus to those findings that says something happened here that is so beyond the pale that it meets the deliberately indifferent prong. What is that thing in your argument? Sure, Your Honor. I think the court needs to look no further than its precedents and Coleman, an attorney, when there was a known risk of suicide because the officers knew, either from someone who told them or they knew the inmate had tried to kill himself before, and then that inmate was given literally the tools he needed to take his own life. And that's what happened here. We can go through for every official who is a defendant here, what they knew, why they were on notice that Mr. Bild was a suicide risk. And what happened? He was put in a common area with a two-story staircase that had been just like one that had been seen for three separate suicide attempts in the last couple of years. And that's the thing that makes it different, is the fact that they had knowledge that three separate suicide attempts had been made in a similar facility with the same type of restrictions that Mr. Bild was placed under. Right. And I think you could go a step broader if we're going to try to draw a parallel star of this Court's precedents and saying, at the very least here, he was given the means to take his own life. So that is a parallel to Coleman, an attorney. You mean just by his placement? Right. Exactly. Exactly. But that's... So every prisoner in general population is given the means? If there are means for the prisoner to take his own life, especially when the officials know that he's a suicide risk? And let's step back, Your Honor. It's not... What about our case, I can't remember the name of it, with the inmate who found a board in a workshop and used it to clobber somebody? Right. And just the access to the boards was not enough. Right. And I'm not familiar with exactly what that case is. But we don't need to stop here in this case either. Because we know that, at least in this case, Mr. Bild rehearsed his own suicide. He climbed up those same staircases two hours before he eventually took his life. He was experimenting with impaling devices, a pencil and a... You mean he climbed up on the railing like the photos show? He did. And he went... And he got through... He got around the... So he got around one time. There was some barrier, which I'll confess I've not seen. It's not in the briefs. There was some barrier at the bottom of that staircase, I believe. He was able to get around it once. He got around that barrier and up a few steps, right? I thought he got... That's how I read the record, but I might be wrong. I believe he got... I believe he got higher. You think he got all the way to the top and he got to the point where... Because it looks like there were some changes in the structure that... from the way it had been when the other suicide attempts had been made. So there was now a slight barrier. So he had to crawl over two barriers rather than the one that existed originally, I think. Right. But... And you think he got all the way up to that kind of the top before. And I thought he only partially ascended, but I don't remember. I do not know... I confess I do not know exactly how high, but I don't think that's really material here. Which defendant knew of that? Sure. That was, at the very least, Officers Scheel and Stelmach who witnessed it. Let's And if they called him down, they left. At the very least, and I think it's really... It might be a little too detailed, with all due respect, Judge Erickson, as far as how far he got. Because they knew he was got behind the barrier that was supposed to protect him. They knew that he was suicidal, or at least should have known that. And that should at least be enough to clue a reasonable officer to the fact that this man may very well take his life. With respect to Nurse Nelson, I talked about experimenting with impaling devices. One... Another prisoner who was in that common area, Mr. Bild, saw him unscrewing a mop handle from the mop. Combining with going up on the stairs, it's clear he was trying to harm himself, or at least should have been clear. And the other prisoner was motioning to Nurse Nelson to say, hey, hey, look at this. This isn't right. And yet he was still kept there. So at the very least, in this case, you have red flags that were present to each of the defendants. Each of the defendants did, albeit different things, to either place Mr. Bild in that area or not remove him from that area or not restrict his access. But at the end of the day, the judge got it right, that this is a fact question. It's a fact question of what these individuals knew, what actions they took, what actions they failed to take. That fact question goes defendant by defendant. That is correct. So a supervisor that wasn't anywhere near these particular scenes, why has he or she kept him in the case? Because they had overhaul ability or responsibility to do something different? I don't think we have any defendants in this case who are merely supervisors. True, some defendants have different knowledge than other defendants do have. But if you're talking about, for example, a Sergeant Capra. No, I mean, our cases require defendant by defendant analysis that I frankly don't think the district court did other than rather superficially. Well, I think we can go defendant by defendant. We can start with Nurse Kaefing. You can do it this morning, but that's not the appeal. Well, but the fact's in the record to establish liability defendant by defendant. And I think that's the important part. We have Nurse Kaefing, Nurse Nelson, Sergeant Capra, who met with Mr. Bild when he was taken in, reeking of gasoline, stained with soot, blisters on his hand from trying to light himself on fire. Nurse Kaefing placed Mr. Bild on suicide watch the same day. What our cases say, placing on suicide watch, that's enough to show knowledge. Nurse Nelson, we're talking about experimenting with impaling devices. She saw another inmate try to alert her to this. I mean, this is right before Mr. Bild ended his life. Sergeant Capra, we talked about. Ms. Schlieff admitted that she knew Mr. Bild was suicidal. She was the one who placed him in C-400. We talked about Officers Steele and Selmach, the ones who saw Mr. Bild rehearsing his suicide attempt, didn't remove him from C-400. As a matter of fact, just in a brief, they sat there and laughed. To the nurses, Nurse Kaefing, Nurse Nelson, both had the authority to place Mr. Bild somewhere else, if not at the very beginning, at least into his confinement, at least when they knew he was despondent after not getting bail. Nurse Kaefing had the ability to arrange a mental health consultation, evaluation for Mr. Bild. That didn't happen, even though the mental health provider was on site during the three days when Mr. Bild was there. Why are all these things not mere negligence? How do they rise to the level of deliberate indifference? Sure. So I think the answer, Your Honor, is right in the term deliberate indifference itself. Deliberate, that contains an element of knowledge. Did you know? Oh, no, that's not what the Supreme Court has said the subjective element of it is. Well, we certainly It's more than mere knowledge. Okay. Well, certainly this Court's precedence Reckless disregard, I think, is a minimum. Right. Okay. But this Court's precedence in Turney and Coleman established the subjective component and that say that it is met when the officers know that an individual was suicidal, for example, because he was on suicide watch, for example, because he had made prior attempts to take his own life. That alone can't be enough because the mere fact that you know that someone may be suicidal is not enough to give rise to liability, right? I mean, if you just think about it logically, I mean, you could take every reasonable step. You could have a guy inside a padded cell and nothing apparently in his possession and if they find a way to break their own neck by slamming into a padded wall and kill themselves, I mean, that's not deliberate indifference, right? Well, wouldn't that go to the indifferent part where they, you know, let's say in your hypothetical, Your Honor, the jailer had knowledge and took actions because of that knowledge. Well, they had knowledge and took some actions here, right? I mean They did, but critically they didn't. They took some actions, but as I said, they gave him the tool he needed to take his life. At the end of the day, at the end of the day, some actions weren't enough. And I bet if you go through these cases, almost all of them there was some action. I mean, I think there's maybe one where they just did nothing. But for the most part, they did something. So I think that where I would like to encourage the Court, how I would like to encourage the Court to look at this is when we have deliberate indifference, we have, you know, the deliberate part, the knowledge part. That doesn't mean that just because some action was taken, all of a sudden qualified immunity immediately attaches. You know, what was the knowledge that the individuals had? What actions did they take or inactions? Were they indifferent? Right? Because at the end of the day, we're protection from known risks of suicide. Were they deliberately indifferent to that right? Did they, were they on notice? And did they not take the actions that were necessary in that case? And unless the Court has anything further, I think that's where I'd like to end this by saying, you know, the defendants knew they had to protect Mr. Bild from killing himself. The facts, as Judge Frank analyzed in his opinion, show that they were on knowledge and did not take adequate means to protect his constitutional rights and ultimately to protect his rights. Thank you, Your Honor. Thank you. Or to protect his life, I'm sorry. I think we understand the issues, but I'll give you half a minute here. Oh, I appreciate it, Judge. The tool to take his own life, that is an example of an ex post facto perspective that this Court rejected in Reller-Girt. They don't know that he's walking up the stairs and he's rehearsing his suicide. Those are facts that have been construed. Was he walking up the stairs or was he climbing up the railing? He walked up the stairs. He walked, there's video, he walks up the stairs and then turns, goes up the next tier, or next stairs and then onto the second tier. And I'm sorry, I don't have a site for you, but there was testimony that there's a window you can see into a female unit. So he's not the first person to walk up to the second tier. Also under Luckert, jails are not required to provide suicide proof institutions. And in the appendix at 14, the Court can see the photo of where the barricade is on the second tier. And finally, the three prior jumping incidents, which it's not clear in the record that that's actually with suicide attempts or if it was for drug seeking, they were in units without barricades. Thank you, Your Honor.